Andrew Jergens v. Commissioner.
Jergens v. Commissioner
Docket No. 111757.
United States Tax Court
1943 Tax Ct. Memo LEXIS 217; 2 T.C.M. (CCH) 385; T.C.M. (RIA) 43322; June 30, 1943
*217 1. Held, the petitioner is taxable on the income of a certain trust, under the provisions of section 22(a) of the Revenue Act of 1938. Andrew Jergens v. Commissioner, 136 Fed. (2d) 497 (C.C.A. 5th Cir., June 15, 1943), affirming B.T.A. memorandum opinion entered August 28, 1942, followed. 2. Held, fee paid to investment counsel is deductible as a non-trade or non-business expense, under the provisions of section 121(a)(2) of the Revenue Act of 1942, amending section 23(a), I.R.C., and retroactive to taxable years beginning after December 31, 1938. Carl M. Jacobs, Esq., 2301 Union Central Bldg., Cincinnati, O., and Murray M. Flack, Esq., 2301 Union Central Bldg., Cincinnati, O., for the petitioner. John O. Durkan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $27,129.16 in the petitioner's income tax for the year 1939. The issues now in controversy are: (1) Whether or not the net income of the Amy Branch Jergens Trust constituted taxable income to the petitioner, under the provisions of section 22(a) of the Internal Revenue Code. (2) Whether or *218 not the petitioner is entitled to deduct from his gross income, as provided by section 23(a) of the Internal Revenue Code, as amended by section 121(a)(2) of the Revenue Act of 1942, a fee of $13,000 paid by him to Fiduciary Counsel, Inc. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. In so far as they are presently material to the issues, they may be stated briefly as follows: The petitioner is an individual residing in Palm Beach, Florida. He filed his income tax return for the year 1939 with the Collector of Internal Revenue for the Florida district at Jacksonville, Florida. On April 15, 1922 the petitioner caused Frank C. Adams to transfer to his wife, Amy Branch Jergens, 773 shares of the common stock of the Andrew Jergens Company, hereinafter called the company, and on December 27, 1922 the petitioner caused his father to transfer 150 shares of such stock to the petitioner's wife. On September 29, 1931 the company issued a single certificate for the 923 shares to the petitioner's wife in exchange for the two certificates representing the shares so transferred to her. On December 28, 1934 the company cancelled the certificate *219 for 923 shares and issued to the petitioner's wife one certificate for 685 shares and one certificate for 238 shares. On December 7, 1934, the petitioner's wife applied to the Connecticut Mutual Life Insurance Company for insurance on the life of the petitioner in the sum of $255,000, and, upon her request, that company issued two such policies to her as beneficiary and absolute owner, one (No. 849067) for $100,000 and the other (No. 849068) for $155,000. On December 31, 1934 petitioner's wife, as settlor, entered into a trust agreement with The First National Bank of Cincinnati, Ohio, and the petitioner, as trustee. Pursuant to the terms of the trust agreement the petitioner's wife transferred by absolute assignment to the trustees Certificate No. 14 for 685 shares of the common stock of the company, and assigned by absolute assignment all her right, title and interest in the Connecticut Mutual Life Insurance policies Nos. 849067 and 849068 to the trustees, subject to the terms of the trust agreement of December 31. 1934. The trust instrument provided that the trustees should first pay all the costs, taxes and other expenses and that they should use the net income to pay premiums *220 on life insurance policies, to pay a specific annuity of $1,700, and to pay the remaining net income to the petitioner's wife in quarterly installments so long as she would live. The petitioner was granted full power and authority to withdraw any part or all of the corpus, except the insurance policies, upon five days' written notice to the cotrustee. The trust was irrevocable unless terminated by the petitioner prior to the grantor's death. The trustees were given unlimited power to hold, manage and control the trust properties, except that the bank was required to abide by all written instructions relating to the trust property given to it by the petitioner, who alone had the power to vote the stock and to appoint investment counsel for the guidance of the trustees. The petitioner also had power to alter, modify or amend the trust as he saw fit or to revoke it in whole or in part, but he was without authority to make the proceeds of the insurance policies payable to his estate. The original trust agreement was in full force and effect during the year 1939 up until September 23, 1939, on which date the petitioner, by a written instrument, made certain amendments to the trust agreement. *221 In that instrument the petitioner did exercise his power to alter, modify and amend the original trust agreement, and thereby made material changes in that agreement, of which the principal one was to pay the remaining net income of the trust to himself during his lifetime. These changes, however, did not affect the issue here drawn. On each of the dates March 15, June 15, October 15, November 15 and November 25, 1939, the trust received dividends of $3,425, making a total of $17,125 from the 685 shares of the company stock, and on December 28, 1939 it received a dividend of $5,000 on the 50 shares of Fiduciary Counsel, Inc. stock owned by it. During 1939 the trustees made disbursements as follows: Trustees' fee
$ 837.86
Collector of Internal Revenue
953.31
Lida Brady
1,575.00
Amy B. Jergens
4,239.24
For premiums on policies
20,827.60
$28,433.01
The disbursements made by the trust, to the extent that they exceeded the income received and available, were covered by trustees' borrowings. For the year 1939 the trustees filed a fiduciary income tax return for the trust and reported as taxable income the amount of $16,130.76, and paid the Federal income tax thereon in *222 the amount of $1,513.44. For the year 1939 Amy Branch Jergens filed an income tax return and reported as taxable income the amount distributed to her from the trust in the amount of $4,239.24, and paid the Federal income tax due thereon. In about 1937 or 1938 the petitioner and his wife, Amy B. Jergens, adopted two children, their names and dates of birth being as follows: Andrew Nicholas Jergens,
III
Born July 16, 1935
Amy Lou (now Mary Ann)
Jergens
Born August 3, 1936 These two children are now in the legal custody of the petitioner. On April 30, 1940, by final decree of the Circuit Court of the Fifteenth Judicial Circuit of Florida, the petitioner's wife obtained an absolute divorce from the petitioner. Thereafter she remarried and is now known as Amy B. Gallop. At the time of the creation of the trust herein mentioned, Amy Branch Jergens had property, exclusive of the property transferred to the trust, in excess of $500,000. If the petitioner is held taxable on the entire net income of the trust, it is stipulated that the trustees' fee of $837.86, disbursed as above stated, shall be excluded therefrom. It was further stipulated that the sum of $13,000 of the $15,238.84 *223 paid in fees by the petitioner to Fiduciary Counsel, Inc. is now in controversy. The record discloses the following additional facts: The petitioner employed Fiduciary Counsel, Inc., hereinafter called Fiduciary, to advise him with respect to normal investment holdings and from time to time to perform unusual and special services. In 1938 and 1939 Fiduciary charged a basic fee computed on a percentage of registered funds. In February or March, 1939, the petitioner asked Mr. Martindell, president of Fiduciary, to come to Florida to discuss two major matters with him - (1) a proposed merger between the company and the Andrew Jergens Company ofohio, hereinafter called the Ohio company, and (2) a list of 16 internal securities of Germany. Mr. Martindell spent about two weeks with the petitioner in Florida. The petitioner was concerned about maintaining control of the company and was fearful that outside control of the company, which was greater than his control of the Ohio company, would result in his losing control of the combined corporations. The petitioner owned slightly over 50 per cent of the Ohio company, which in turn owned shares of the company stock. The value of the petitioner's *224 holdings amounted to several millions of dollars. The petitioner also desired to effect the merger with a minimum tax liability. Fiduciary surveyed the situation, recommended a plan, and the plan was adopted, whereby the merger was accomplished, the petitioner's control was preserved, and, upon the advice of Fiduciary's legal staff, the tax liability was minimized. The petitioner owned about 16 German securities worth from $40,000 to $50,000 in American dollars. He asked Fiduciary's advice concerning them. Fiduciary attempted to investigate the matter in this country but was unsuccessful. Mr. Martindell then, in November 1939, went to Germany, found a man to manage the securities within Germany, arranged for their proper custody and provided for the cashing of certain coupons which would have been valueless if not cashed in 1939. In December 1939 Fiduciary rendered a bill of $13,000 to the petitioner for these extra services relating to the merger and to the German securities. No allocation was made between the two items. The petitioner paid the fee in 1939. The services rendered by Fiduciary to the petitioner in connection with the supposed merger and with the petitioner's holdings *225 of German securities were for his personal benefit and were incurred for the management, conservation or maintenance of property held for the production of his income. Opinion VAN FOSSAN, Judge: It was conceded by petitioner that decision on the first issue would be governed by the decision of the Circuit Court of Appeals for the Fifth Circuit in Andrew Jergens v. Commissioner, in which case a decision of this Court [Dec. 12,823-V] was under review. We had held that the petitioner was taxable on the income from the trust, under the provisions of section 22(a) of the Revenue Acts of 1936 and 1938. On June 15, 1943 the Circuit Court of Appeals [1] affirmed the determination of this Court. Therefore, this issue is decided in favor of the respondent. The second issue involves the deductibility of a fee of $13,000 paid to Fiduciary. The petitioner contends that the allowance is proper, under the provisions of section 121(a)(2) of the Revenue Act of 1942, [2] amending section 23(a) of the Internal Revenue Code and applicable to taxable years beginning after December 31, 1938. The *226 year 1939 is here in question. We have found as a fact that the services rendered to the petitioner by Fiduciary were performed in connection with the management, conservation and maintenance of his property holdings for the production of income. The facts clearly support this conclusion. There is no doubt that the petitioner held his stock in the Ohio company and the German securities for the production of income. Nor can it be gainsaid that the petitioner sought and obtained Fiduciary's advice and counsel for the "management, conservation and maintenance" of his stockholdings. See Jack Rosenzweig, 1 T.C. 24; R.C. Coffey, 1 T.C. 579. *227 We might add that the cashing of the German securities coupons, about to expire, certainly comes within the statutory language "for the * * * collection of income." Since Fiduciary's advice relating to the merger, the minimizing of tax liability, and the German securities, - the three matters for which the fee was paid - was obtained for the purposes contemplated in section 121(a)(2), it is unnecessary to require a egregation or allocation of the portion of the services applicable to each. It is well settled that the taxpayer may employ all legitimate means to minimize his taxes. In so doing, it is obvious that he is "conserving" and "maintaining" his property. The respondent's own Regulation (Regulation 103, section 19.23(a)-15, see T.D. 5196 provides as follows: * * * Ordinary and necessary expenses incurred in the management, conservation or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses incurred in managing, conserving, or maintaining *228 property held for investment may be deductible under this provision even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. * * * It appears, therefore, that this Regulation covers the character of expenditure which the petitioner made in the payment of the $13,000 fee to Fiduciary. The fee also comes well within the scope of the statute. Consequently, it is properly deductible. Decision will be entered under Rule 50. Footnotes
1. CCA-5, 136 Fed. (2d) 497, 43-1↩ USTC [*] 9489. - CCH.
2. SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS. (a) Deduction for Expenses. - Section 23 (a) (relating to deduction for expenses) is amended to read as follows: (a) Expenses. - * * * * *
"(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."↩